**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **RANDY YOUNG,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:07-CV-395** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **MAGISTRATE JUDGE ABEL** |
| **KALI HOSPITALITY, LTD.,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**OPINION AND ORDER**</u>
**I. INTRODUCTION**

This disability discrimination case is before the Court on Plaintiff, Randy Young's ("Young") Motion for Summary Judgment. (Doc. 39.)  For the reasons set forth below, Young's Motion for Summary Judgment is **DENIED**.

**II. BACKGROUND**

Young, an Ohio resident, is a paraplegic who is confined to a wheelchair and unable to walk.  Kali Hospitality, Ltd., ("Kali") is an Ohio corporation that has an ownership interest in certain real property located at 1849 Stringtown Road, Grove City, Ohio, housing the Days Inn Motel ("Days Inn").[1][2]

---

[1]Kali received the Days Inn through assignment of a Land Contract Agreement between former Defendant, Columbus Lintel, Inc., and Dinesh Patel.

[2]Under the ADA a "place of public accommodation" must fall within one of the twelve specified categories of a "facility, operated by a private entity, whose operations affect commerce" 42 U.S.C. § 12181(7)(A) ("an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor")

On January 20, 2007, Young allegedly attempted to avail himself of the services of the Days Inn.  Young also assets that he is a "tester," or an individual who acts on behalf of himself and others with disabilities.[3]  Young alleges that he encountered certain barriers which inhibited his ability fully to enjoy the goods, services, facilities, and privileges of the motel.  These barriers included: insufficient and difficult to use disabled parking, inaccessible public restrooms, inaccessible bathroom facilities in his motel room; and inaccessible lobby and check-in facilities.

On March 27, 2008, Young's expert, William Norkunas ("Norkunas"), conducted an ADA barrier identification site survey.  On July 9, 2010, Norkunas identified barriers to accessibility in a report.[4]  Young then requested that Kali make the following recommendations:

1. Disabled Accessible Parking: re-stripe the parking lot to ensure the required number of disabled accessible parking spaces;
2. Alternate Entrances / Exits at the Hotel: ensure that all means of egress are ADA compliant;
3. Main Front Entrance, Inaccessible Door Handles: install ADA compliant loop type handles;
4. Main Front Registration Counters: lower the counter so there is a 36 x 36 counter;
5. Doors Throughout the Hotel: install ADA compliant signage throughout;
6. Lobby Area – No Accessible Tables: ensure 5% of the tables are ADA compliant;
7. Phones Mounted Too High: lower the phone to ADA standards;
8. Public Restrooms – Lobby Area (Men's Restroom): install ADA signage;
9. Public Restrooms – Lobby Area (Men's Restroom): install an automatic door opener to permit ingress and egress;

---

[3] At oral argument, Kali stated that Young had brought 17 or 18 similar suits filed pursuant to Title III of the ADA within the Southern District.  Counsel for Young, while unable to state the exact number of lawsuits filed by Young, admitted that she had handled several similar suits on behalf of her client.

[4] A copy of Norkunas's report was filed as an attachment to Young's Motion for Summary Judgment.  (*See* Doc. 39 Mot. for Summ. Judg. Attachment 3.)

10. Public Restrooms – Lobby Area (Men's Restroom): adjust the interior privacy door;

11. Public Restrooms – Lobby Area (Men's Restroom): install ADA signage to the storage room;

12. Public Restrooms – Lobby Area (Men's Restroom "Handicapped" Toilet Stall): install ADA compliant grab bars;

13. Public Restrooms – Lobby Area (Women's Restroom): install ADA signage on the exterior door and interior stall doors;

14. Public Restrooms – Lobby Area (Women's Restroom): install an automatic door opener on the exterior door to permit ingress and egress;

15. Public Restrooms – Lobby Area (Women's Restroom "Handicapped" Toilet Stall): ensure compliance with ADA standards;

16. Fire Exit Doors: install ADA compliant signage;

17. Accessible Guest Rooms (Light Fixture): Acquire touch sensitive lamps;

18. Accessible Guest Rooms: Modify to ensure there are two guest rooms with compliant roll-in showers and five guest rooms with compliant bathtubs;

19. Accessible Guest Rooms (Sinks): modify to be compliant with ADA standards;

20. Accessible Guest Rooms (Towels): lower towel racks to be accessible;

21. Accessible Guest Rooms (Toilet): modify to provide the required space;

22. Accessible Guest Rooms (Desk and Tables): modify to ensure there is at least 27 inches of clear space beneath the desk;

23. Guest Laundry: replace the laundry in an accessible location;

24. Swimming Pool: ensure access and egress from the pool area when open;

25. Lounge / Bar (Tables): ensure that 5% of the tables are accessible regarding height requirements;

26. Lounge – Men's Restroom: ADA compliant signage;

27. Lounge – Men's Restroom (Urinal): ensure that urinal and the flush control are accessible;

28. Lounge – Men's Restroom (Toilet Stall): ensure the stall door opens outward, rather than inward;

29. Lounge – Men's Restroom (Toilet Stall): install ADA compliant grab bars;

30. Lounge – Men's Restroom (Toilet Stall): mount the flush control on the wide side;

31. Lounge – Men's Restroom (Sink): have 19 inches of depth for wheelchairs to roll under;

32. Lounge – Men's Restroom (Faucet Controls): replace faucets with lever type handles;

33. Lounge – Men's Restroom: install automatic door opener to permit ingress and egress;

34. Lounge – Women's Restroom: ADA compliant signage;

35. Lounge – Women's Restroom (Toilet Stall): install grab bars;

36. Lounge – Women's Restroom (Sink): ensure ADA compliance by having 19 inches of depth for wheelchairs to roll under; and

> 37. Lounge – Direct Access to/from the Main Hotel Lobby: install automatic door opener to permit ingress and egress.

(Doc. 50 Pl. Reply to Mot. for Summ. Judg. p. 8-11.)

On February 23, 2009, Kali, in a letter to Young, agreed to make the modifications requested above in numbers 1-8; 10-13; 16-17; 19-20; and 22. Thus, the remaining modifications at issue were those found in numbers 9; 14-15; 18; 21; and 23-37.[5]

On May 4, 2007, Young initiated the present action in this Court. On September 12, 2007, Young filed an Amended Complaint, alleging that Kali was in violation of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.* ("ADA"), and requested that the Court order an injunction requiring Kali to make all readily achievable alterations. Young further alleged that Kali was in violation of the Ohio Disability Discrimination Law, O.R.C. § 4112.01 *et seq.* ("ODDL"), and requested compensatory and punitive damages, attorneys fees and costs.

On July 31, 2008, Young filed a Motion to Compel Discovery Responses and Requests for Sanctions, asking that the Court require Kali to respond to Young's first set of interrogatories and request for production of documents. Young also requested that the Court order sanctions against Kali for the time spent attempting to obtain Kali's discovery responses and to file the related Motion to Compel. On September 4, 2008, Magistrate Judge Abel issued an Order requiring Kali to respond to Young's first set of interrogatories and request for production of documents. Further, on June 24, 2009, Magistrate Judge Abel ordered Kali to make its financial records available for inspection by Young within 30 days.

---

[5]At oral argument, counsel for Young indicated that this was still understood to be true, but that no information or documentation had been provided to document that the agreed upon modifications had been completed.

-4-

On October 14, 2009, Young filed a Motion for Summary Judgment.  Subsequent to this filing and before Young filed a reply to the Motion for Summary Judgment, on December 22, 2009, Young again filed a Motion to Compel Discovery.  Young asked this Court to order Kali to supplement certain interrogatories and request for production of documents.  On February 25, 2010, Young filed a Motion for Sanctions of Default Judgment and Attorney's Fees.  On April 2, 2010, Magistrate Judge Abel issued an Order granting Young's Motion to Compel and requiring Kali to supplement specified interrogatory responses and to make its financial records available for inspection within 14 days.  On June 15, 2010, Magistrate Judge Abel granted in part and denied in part Young's Motion for Sanctions of Default Judgment and Attorney's Fees.  Young was awarded expenses related to bringing the Motion, but it was determined that further sanctions were not warranted.

The Court initially scheduled oral argument on Young's Motion for Summary Judgment for April 9, 2010.  On March 5, 2010, upon Young's Motion to Continue Oral Argument, the Court rescheduled oral argument on Young's Motion for Summary Judgment for July 19, 2010.  On July 14, 2010, five days before oral argument was scheduled to occur, Young filed a Supplement to the Motion for Summary Judgment and a Motion for an Order to Compel Discovery.  Young did not request leave from this Court to Supplement his Motion for Summary Judgment filed only a few days before oral argument.  Therefore, Young's Supplement to the Motion for Summary Judgment is untimely and will not be considered.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56©.  But "summary

judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving party "may not rely merely on allegations or denials in its own pleading."  Fed. R. Civ. P.56(e)(2); *see Celotex*, 477 U.S. at 324; *Search v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. LAW AND ANALYSIS

Young asserts that he is entitled to summary judgment because: (1) Kali waived the affirmative defense that the requested modifications are not readily achievable by failing to raise it in the answer; (2) Young has met his legal burden of production to show that certain barriers exist and that the removal of those barriers is readily achievable; (3) areas of the Days Inn that have been altered but be made readily accessible to the maximum extent feasible; and (4) the other proposed modifications to the non-altered areas are readily achievable.

Kali takes the position that summary judgment is inappropriate because: (1)Young has not met his initial burden of production; and (2) the desired modifications can not be achieved without difficulty and expense.

-6-

Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182(a). A Title III claim requires a plaintiff to establish that: (1) he or she is disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA. Under the ADA, "discrimination includes ... failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). For purposes of summary judgment, Kali has not raised an issue as to whether the Days Inn is a place of public accommodation, or whether Young, as a paraplegic, is disabled and may seek the protection of the ADA. Therefore, all of the parties arguments concern the third required prong.

## A. WAIVER

Young argues that whether a proposed modification is "readily achievable" is an affirmative defense under the ADA and that Kali waived the defense by failing to raise it in the Answer. Young takes the position that Kali never raised this defense in the Answer specifically, and that Kali did not otherwise include a catch-all affirmative defense. Young further asserts that by failing to assert the affirmative defense, Kali deprived him of notice that the requested modifications were not readily achievable.

The Federal Rules require a party to state its affirmative defenses in an Answer. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense....") The Sixth Circuit has held that "[f]ailure to plead an affirmative defense in the first responsive pleading to a complaint generally results in waiver of that defense." *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citing *Haskell v. Washington Twp.*, 864

F.2d 1266, 1273 (6th Cir. 1988)).  The Sixth Circuit has also stated that "[i]t is well established, however, that failure to raise an affirmative defense by responsive pleading does not always result in waiver."  *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993) (finding that the defendant's failure to raise an issue until responding to a motion for summary judgment provided sufficient notice to the plaintiff).  The Supreme Court has held that the purpose of Federal Rule 8© is to give the opposing party notice of the affirmative defense and a chance to rebut it. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971).  Where "a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8© does not cause the plaintiff any prejudice.'" *Moore, Owen, Thomas & Co.*, 992 F.2d at 1445 (internal citations omitted).

The Sixth Circuit has never ruled upon whether a defendant's failure to plead that barrier removal is not readily achievable in its answer to a complaint filed pursuant to Title III of the ADA results in a waiver of that defense.  Other courts considering this issue have held that whether barrier removal is readily achievable is an affirmative defense.  *See Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1274 (11th Cir.2006); *Colorado Cross Disability Coalition v. Hermanson Family Ltd. P'ship*,  264 F.3d 999, 1002-03 (10th Cir.2001); *Wilson v. Haria and Gorgi Corp.*, 479 F.Supp.2d 1127, 1133 (E.D. Cal. 2007).  In *Wilson*, the district court specifically considered the waiver issue and found that the defendant had failed to plead that barrier removal was not readily achievable in its answer, thereby waiving the defense. *Wilson*, 479 F.Supp.2d at 1133.  The district court relied on Ninth Circuit case law for the general proposition that failure to plead an affirmative defense results in waiver.  *See Enlow v.*

*Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 819 (9th Cir. 2004). In *Enlow*, however, the Ninth Circuit held that waiver occurred only after the defendant did not plead an affirmative defense in its motion for summary judgment.

In this case, Kali has raised the affirmative defense that Young's requested modifications are not readily achievable in the Response to the Motion for Summary Judgment and in the Affidavit of Dinesh Patel. Further, under Sixth Circuit case law that is "well established" that when a plaintiff is made aware of the affirmative defense by some other pleading, the plaintiff is not prejudiced. Additionally, here, Young has made no claim that he has been prejudiced. Indeed, at oral argument, counsel for Young conceded that her client had not been prejudiced such that she had become unable to work the case. Therefore, this Court finds that Kali has not waived the affirmative defense that the modifications are not readily achievable.

## B. BURDENS OF PRODUCTION AND PERSUASION

The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

Young and Kali disagree as to their respective burdens under the ADA to show that a barrier is readily achievable. Young argues that he should only be required to meet the initial burden of production to show that a particular barrier removal is readily achievable by identifying the modification and making a plausible demonstration that the modification is an alteration under the ADA. According to Young, the burden of persuasion then shifts to the defendant to show that the modification is not an alteration. Young asserts that this allocation of burdens between plaintiffs and defendants best preserves the congressional intent of Title III.

Kali argues that for Young should be required to meet a higher standard to satisfy the initial burden of production, identifying not only the modification and suggesting that the modification is an alteration under the ADA, but also by providing cost estimates and specific design suggestions. Only after Young has made such a showing, according to Kali, should the burden of persuasion shift to the defendant to show that an alteration is not readily achievable.

Title III of the ADA does not specify which party bears the burden of proving that removal of an architectural barrier is not readily achievable. The Sixth Circuit has not adopted a test to determine the requirements of the burdens of production and persuasion that are required of plaintiffs and defendants when litigating under Title III of the ADA. The Second, Fifth, Ninth, Tenth, and Eleventh Circuits have explicitly addressed this issue in the context of Title III suits, but case law from these respective circuits conflict as to the appropriate test.

The Fifth Circuit was the first of the circuit courts to adopt a burden shifting framework in the context of a reasonable modification claim under Title III of the ADA. *See Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052 (5th Cir. 1997) (under subsection (ii) modification claim, defendant bears "burden of proving that the requested modification would fundamentally alter the nature of the public accommodation"). In *Johnson*, the Fifth Circuit held that "the plaintiff bears the burden of showing that a modification was requested and that the requested modification was reasonable." *Id*. at 1059 ("[T]he plaintiff bears the ultimate burden of proof on the issue."). The Fifth Circuit further found that "the defendant must make the requested accommodation unless the defendant pleads and meets its burden of proving that the requested accommodation would fundamentally alter the nature of the public accommodation." *Id*.

-10-

The Tenth Circuit relied on this reasoning in addressing the issue of the proper allocations of burdens under Title III of the ADA. *See Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership I*, 264 F.3d 999, 1003-04 (10th Cir. 2001) (adopting a burden shifting framework for claims made under subsection (iv) of Title III of the ADA).  In *Colorado Cross*, the Tenth Circuit held that the "[p]laintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable [and] can be accomplished easily and without much difficulty or expense." *Id*. at 1005-06.  Only once plaintiff meets this burden will the defendant have "the opportunity to rebut that showing" and to "[bear] the ultimate burden of persuasion regarding its affirmative defense that a suggested method of barrier removal is not readily achievable." *Id*. at 1006. In *Colorado Cross*, plaintiff sought an order requiring the defendant to install an accessible ramp at the entrance to the building.  In support of this contention, at the bench trial, plaintiff relied upon the testimony of an expert in historical preservation in architecture and urban design that the "front entrance ... could be made accessible without threatening or destroying the historic significance of the building." *Id*. at 1007.  The expert provided a conceptual sketch in support of his assertion. *Id*. Plaintiff also relied upon the testimony of a financial expert that "the financial impacts of installing ramps would be relatively immaterial and easily achievable." *Id*. at 1008. The Tenth Circuit found that plaintiff failed to meet his burden of production because he provided only "speculative concepts" without "precise cost estimates regarding the proposed modification." *Id*. at 1009.

The Eleventh Circuit has adopted the Tenth Circuit approach articulated in *Colorado Cross*. *See Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, (11th Cir. 2006)

("[W]e adopt that burden shifting framework for the reasons articulated by the *Colorado Cross* court."). The Eleventh Circuit held that "a plaintiff must present evidence so that a defendant can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost implementation, and the economic operation of the facility." *Id*. at 1274. The Eleventh Circuit reasoned that "[w]ithout evidence on these issues, a defendant cannot determine if it can meet its subsequent burden of persuasion." *Id*. In *Gathright-Dietrich*, plaintiffs sought to have the court require defendants to make alterations to a historic theater. *Id*. at 1271-72. The Eleventh Circuit found that the plaintiff provided "non-specific, conceptual proposals that did not provide any detailed cost analysis." *Id*. at 1274. The Eleventh Circuit upheld the district court's grant of summary judgment because the plaintiff had failed to provide expert testimony on the feasibility of the proposed modifications, failed to show proposed modifications were inexpensive, and failed to "produce a financial expert to link the estimated costs of [the] proposals with [the defendant's] ability to pay for them." *Id*. at 1274-75.

The Ninth Circuit has expressly rejected the burden shifting approach allocated in Colorado Cross where a defendant sought a historical designation. *See Molski v. Foley Estates Vineyard and Winery*, LLC, 531 F.3d 1043, 1048 ("[W]e place the burden on the party with the best access to information regarding the historical significance of the building."). The Ninth Circuit held that a defendant "is in a better position to introduce, as part of an affirmative defense, detailed evidence and expert testimony concerning whether the historic significance of a structure would be threatened or destroyed by the proposed barrier removal plan." *Id*; *see also Colorado Cross*, 264 F.3d at 1011 (Lucero, J., dissenting) ("[i]f plaintiffs must all but present the court with a pre-approved construction contract for a sum certain which includes detailed plans,

-12-

impact statements, engineering studies, and permits to meet their threshold burden, virtually no plaintiff could afford to bring an architectural barrier removal claim"). Notably, however, *Molski's* holding has been applied only to Title III cases concerning historic buildings. *See Johnson v. Finks*, Case No. 09-1271, 2009 WL 3644299 *3 (E.D. Cal. Nov. 2, 2009). Lower courts within the Ninth Circuit have continued to use the burden shifting framework articulated in *Colorado Cross* in all other contexts. *Id*; *see also Vesecky v. Garick, Inc.*, 2008 WL 4446714 *2 (D. Ariz. Sept. 30, 2008) ("[U]ntil the Ninth Circuit provides additional and specific instruction to the lower courts this Court will follow the overwhelming majority of federal courts that apply the burden-shifting framework of *Colo. Cross*, specifically in cases where a historic building is not at issue.").

The Second Circuit has adopted a test that requires less for the plaintiff to be able to meet the burden of production "that the area in question is covered by the statute and that the desired access may be achieved with a cost and scope not disproportionate to the overall alteration." *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 372 (2d Cir. 2008).[6] Under *Roberts*, plaintiffs meet their burden by providing "cost estimates that are facially plausible, without reference to design details, and are such that the defendant can assess its feasibility and cost." *Id.* ("either party may include in its analysis, as costs or benefits, both monetary and non-monetary considerations") The Second Circuit specified that "[n]either the estimates nor the proposal are required to be exact or detailed." *Id.* at 373. Then the burden of persuasion would shift to the defendant to show that "the cost and scope of compliance would, in fact, be disproportionate."

---

[6]In *Roberts*, the Second Circuit explicitly borrowed from case law under the Rehabilitation Act involving "reasonable accommodations" in allocating burdens to the parties. *Roberts*, 542 F.3d at 372.

*Id.* Under even the test from the Second Circuit, however, a Title III plaintiff needs to provide some cost estimate and a proposal for barrier removal.

District courts within the Sixth Circuit have adopted the approach set forth in *Colorado Cross*.[7] *See Access 4 All, Inc. v. OM Management, LLC*, Case No. 06-CV-0374, 2007 WL 1455991, *10-11 (S.D. Ohio May 15, 2007) (finding that factual questions precluded the entry of summary judgment in favor of the plaintiff); *Disabled Patriots of America, Inc., v. ODCO Investments, Ltd.*, 04-CV-399, 2006 WL 782725, *4 (N.D. Ohio Mar. 27, 2006) (finding that plaintiffs were not entitled to summary judgment where they failed to provide "a complete and precise cost to remove all barriers"). Whether or not the parties have met their relative burdens in a Title III ADA case is "an inquiry [that] must be based on a case by case basis under the particular circumstances and factors listed in the definition of readily achievable." *Colorado Cross*, 264 F.3d at 1009.

Young advocates for this Court to adopt the test articulated in *Roberts* that would require him to meet a lower standard to set out a prima facie case under Title III and meet the burden of production. Kali argues that the Court should adopt the standard set forth in *Colorado Cross*.

Young, however, can not meet either the *Roberts* test or the *Colorado Cross* test. Young's expert report provides a detailed listing of the ADA violations at the Days Inn, but it does not provide any cost estimates. Young has not otherwise submitted any evidence as to the estimated costs of the proposed modifications that were required even by the Second Circuit under the less-stringent *Roberts* test. *Roberts*, 542 F.3d at 372. At oral argument, counsel for

---

[7]This Court also finds the reasoning in *Colorado Cross* persuasive. As set forth above, however, because Young satisfies neither the *Colorado Cross* test nor the *Roberts* test, this Court does not have to decide that question. Young fails to meet his burden under both.

Young conceded that Young *had not provided any cost estimates* during the course of this litigation.  Both *Colorado Cross* and *Roberts* would require plaintiff to set forth the costs of the proposed modifications.  *Roberts*, 542 F.3d at 372; *Colorado Cross*, 264 F.3d at 1009. The difference between the tests is that *Roberts* requires only estimates, while *Colorado Cross* would require plaintiffs to be more "precise".  *Id*.  In assessing a previous case by Young within this jurisdiction, the court noted that where Young had failed to provide precise cost estimates for some modifications, no cost estimates for other modifications, or any expert testimony regarding the economic operation of the defendant's facility to determine the difficulty in accomplishing the modifications, Young was not entitled to summary judgment.  *Access 4 All*, Case No. 06-CV-0374, 2007 WL 1455991 at *10-11.  Similarly here, while Young has submitted evidence of a small business loan Kali received, previous tax returns for the corporation and other financial documents, Young has not provided any evidence as to what impact, if any Kali's financial status might have on the proposed modifications or Kali's ability to achieve the modifications.[8] In part Young can not assess the financial impact because Young has not demonstrated the cost of the proposed modifications.  Young's argument that a motel in a metropolitan area will continue to do business is insufficient.  Indeed, Kali has submitted evidence, in the form of affidavits that the proposed modifications to the bathrooms and accessible guest rooms would cost more than $25,000.  Kali further asserts, via affidavits, that in 2008 and 2009 the Days Inn has sustained net operating losses that amount to hundreds of thousands of dollars.

---

[8]Additionally, these financial documents received from the U.S. Small Business Administration were not accompanied by an affidavit.  Therefore, it is not clear that they are actually admissible to be considered by the Court in ruling on the Motion for Summary Judgment

## C. MODIFICATIONS TO ALTERED AREAS

Young argues that the lounge area and the accessible rooms at the Days Inn have been altered.  Since alterations have been made, Young contends that the ADA requires these altered areas to be readily accessible to the maximum extent feasible.

Federal regulations provide that an "alteration" is "a change to a place of public accommodation or commercial facility that affects or could affect the usability of the building or facility or any part thereof."  28 C.F.R. § 36.402(b).  Under the federal regulations, remodeling and renovation are explicitly listed as alterations.  28 C.F.R. § 36.402(b)(1).  Once it is established that an area has been altered, the Court "must then decide whether the alteration was made readily accessible to and usable by disabled individuals to the 'maximum extent feasible.'" *Roberts*, 542 F.3d at 371.  This phrase "to the maximum extent feasible," is defined to apply "to the occasional cases where the nature of the existing facility makes it virtually impossible to comply fully with applicable accessibility standards through planned alteration."  28 C.F.R. § 36.402©.

Here, Young has provided copies of the blueprints from the Days Inn identifying alterations to the lounge area.[9]  In response to certain interrogatories Kali admitted that it modified the accessible rooms to make them ADA accessible.  Young asserts that these areas must now be made accessible to the maximum extent feasible.  Young, however, can not simply state that the lounge area and accessible rooms have been altered.  He is still required to meet the burden of production discussed in detail in section, *supra*.  Young has not identified any potential costs of the proposed modifications.   Admissions by Kali that the areas have been

---

[9]  In 2009, the lounge area of the Days Inn was leased out to a third party.

altered does not alone, with no other evidence of the cost of the proposed modifications or their potential effect on the Days Inn business, make summary judgment appropriate.  Material facts regarding the proposal and the financial ramifications of the modifications are at issue and must be considered when determining whether the modifications are "readily achievable" under the ADA, regardless of whether certain areas have been altered.

### D.  MODIFICATIONS TO NON-ALTERED AREAS

Young argues  that the modifications identified by Norkunas are readily achievable because they are easily accomplishable and can be done without much difficulty or expense. Kali contends that Young has not provided any evidence of the costs to implement the proposals, or any effect they might have operationally or economically on the Days Inn.  Plaintiff contends the modifications identified in numbers 1, 2-3, 6-7, 10, and 12, listed *supra* in the Background section, are included within the federal regulations.  Young takes issue with Kali's contention that the modifications would be costly, arguing that Kali has misrepresented its financial resources and that a lack of financial resources can not be used as an excuse for failing to implement the requested modifications.

Young wants this Court to rely on the finding in *Roberts*, which allows for the Court to consider monetary and non-monetary considerations in the analysis of a Title III claim.  *Roberts*, 542 F.3d at 373.  Young's assessment in the briefs of Kali's financial situation is not conclusive. Even under the *Roberts* standard, Young is "require[d] to articulate a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits."  *Id*.  Young has not shown what the "costs" of the his "plausible proposal for barrier removal" are.  *Id*.

Having identified proposed modifications, Young would have this Court rely solely on whether those modifications fall within alterations specifically considered under the ADA. This is not sufficient. Within the ADA itself Congress included factors which are to be considered in evaluating whether removal of a barrier is readily achievable. These include: (1) the nature and cost of the action; (2) the overall financial resources of the facility or facilities involved; (3) the number of persons employed at such facility; (4) the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (5) the overall financial resources of the covered entity; (6) the overall size of the business of a covered entity with respect to the number of its employees; (7) the number, type, and location of its facilities; (8) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; and (10) the geographic separateness, administrative or fiscal relationship of the facility or facilities to the covered entity. 42 U.S.C. § 12181(9). Some of these factors, such as the overall financial resources of the Days Inn, concern material facts that are disputed. Other factors, such as the number of employees and the effect on expenses and resources of the proposed modifications are factors about which the Court does not have any evidence to consider. Young has not met the burden of production and summary judgment is appropriate.

## V. CONCLUSION

For the foregoing reasons, Young is not entitled to summary judgment. Young has merely proposed modifications without any estimation of the costs associated with the desired modifications or any indication of what impact, if any, the costs of the modifications would have

-18-

on Kali's business. Young has not met the burden of production that Title III of the ADA requires.  Young's Motion for Summary Judgment (Doc. 39) is **DENIED**.

      **IT IS SO ORDERED.**


           **___s/Algenon L. Marbley___**
           **ALGENON L. MARBLEY**
           **UNITED STATES DISTRICT COURT**

**Dated: August 2, 2010**